# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

**JUDGMENT IN A CRIMINAL CASE**

UNITED STATES OF AMERICA

v.

CASE NO. 3:99CR00207(AVC)

**Peter D. Hirschl**
33 Arnoldale Road
West Hartford, CT 06119
SSN: **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**       DOB: **08/20/56**

<u>Nora R. Dannahy</u>, Assistant U.S. Attorney

<u>Jacob D. Zeldes</u>
Defendant's Attorney

The defendant pled guilty to count **one**. Accordingly, the defendant is adjudged guilty of count **one**, which involves the following offense:

Title & Section: **18 U.S.C. § 1956(h)**                               Count: **one**
Nature of Offense: **Conspiracy to Engage in Monetary Transaction in Criminally Derived Property**
Date Offense Concluded: **05/99**

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

<u>The defendant is hereby ordered committed to the custody of the United States Attorney General or his duly authorized representative to be imprisoned for a term of: **five (5) months** with the recommendation that the defendant serve this term in a halfway house; to be followed by a term of **five (5) months** of home confinement with a voice verification monitoring system. After completing the term of home confinement, the defendant shall serve a **three (3) year** term of supervised release. Special Conditions of Supervised Release include: (1) that the defendant pay all costs of home confinement including the cost of the voice verification monitoring; (2) that the defendant shall perform two hundred (200) hours of community service within the first year of his supervised release; (3) that the defendant shall pay a fine of $15,000.00 during the first year of his supervised release; and (4) that the mandatory drug testing requirements of supervised release are waived. The defendant shall voluntarily surrender to the U.S. Marshal for this district on **October 30, 2002**, or at such other time and place as designated by the Bureau of Prisons.</u>

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. In addition to the special conditions of supervised release imposed above, it is hereby Ordered that the general conditions of supervised release set out on the reverse side be imposed.

It is ordered that the defendant shall pay a Special Assessment of **$100.00**, for count one which shall be due immediately.

**September 23, 2002**
Date of Imposition of Sentence

_____
Alfred V. Covello, Chief United States District Judge
Date: **September 24, 2002**

CERTIFIED AS A TRUE COPY
ON THIS DATE _____
Kevin F. Rowe, Clerk
BY: _____
    Deputy Clerk

**MICROFILM**

**SEP 2 4 2002**

**HARTFORD**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 3:99CR-207 (AVC) |
| PETER D. HIRSCHL | : VIOLATION: |
| | : 18 U.S.C. §1956(h) (Conspiracy To Money Launder) (One Count) |

**INFORMATION**

The United States Attorney charges:

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

1. Defendant PETER D. HIRSCHL was a resident of West Hartford, Connecticut and licensed to practice law in the State of Connecticut.

2. The law office of defendant PETER D. HIRSCHL was located at 56 Arbor Street, Hartford, Connecticut.

3. From on or about July 22, 1997 to on or about January 6, 1999, Paul J. Silvester was the Treasurer for the State of Connecticut.

4. Paul J. Silvester ran for the position of Connecticut State Treasurer but was defeated in the November, 1998 election.

5. Defendant PETER D. HIRSCHL was the brother-in-law of Paul J. Silvester.

6. The State of Connecticut Pension Fund consisted of approximately $18 billion in assets. The Treasurer for the State of Connecticut was the sole fiduciary for the State of

Connecticut Pension Fund and thus had unilateral authority to make decisions about the investment of the Pension Fund assets. The clients of the Pension Fund included approximately 150,000 teachers as well as State and municipal employees. The Treasurer's Pension Funds Management Division was responsible for managing the pension and trust assets, one of which was alternative investment portfolios comprised of investments in real estate and private equity.

7. A private equity fund is an externally managed fund investing in equity-like securities of developing companies in need of growth or expansion capital as well as in selected equity opportunities in mature industries.

8. The activities of both Fleet Bank and Advest affect interstate commerce.

### THE CONSPIRACY

9. From approximately November, 1998 through on or about May, 1999, in the District of Connecticut and elsewhere, defendant PETER D. HIRSCHL together with Paul J. Silvester and Christopher A. Stack, who are not charged herein, did unlawfully, willfully and knowingly combine, conspire, confederate and agree with each other to commit certain offenses against the United States as follows:

> to knowingly engage, attempt to engage, and cause others to engage in monetary transactions in criminally derived property that was of a value greater than $10,000, and which was derived from specified unlawful activity, in violation of Title 18, U.S.C. §1957.

## **MANNER AND MEANS**

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

10. In approximately March, 1997, Paul J. Silvester did corruptly solicit, demand, accept, and agree to accept a thing of value, that is a portion of the monies Christopher A. Stack received as a consultant or placement agent on certain private equity funds with which the State of Connecticut Pension Fund invested, intending to be improperly influenced and rewarded in the business, transaction or series of transactions of the Connecticut State Treasurer's Office, that is the investment of Connecticut Pension Funds.

11. As a result of this corrupt agreement, Paul J. Silvester was aware how much money Christopher A. Stack received as a consultant or placement agent on private equity investments and improperly directed two private equity consulting agreements to Christopher A. Stack.

12. As part of the conspiracy, in approximately November, 1998, defendant PETER D. HIRSCHL and Paul J. Silvester agreed that Christopher A. Stack would retain defendant PETER D. HIRSCHL purportedly to perform legal services but that, in fact, no material legal services would be provided and the monies paid by Christopher A. Stack to defendant PETER D. HIRSCHL would be for the benefit of Paul J. Silvester.

13. It was further part of the conspiracy that defendant PETER D. HIRSCHL sent to Christopher A. Stack a retainer letter

which stated that defendant PETER D. HIRSCHL was to charge Christopher Stack $450.00 per hour. This hourly rate greatly exceeded the normal billing rate for defendant PETER D. HIRSCHL and was designed as a means to explain the amount of monies, which totaled $230,000.00, received from Christopher A. Stack.

14.  Defendant PETER D. HIRSCHL sent no bills or work product to Christopher A. Stack.

15.  It was further part of the conspiracy that, at the direction of Paul J. Silvester, defendant PETER D. HIRSCHL deposited to a Fleet Bank Account, Account No. 8919100 in the name of Attorney Peter D. Hirschl, two checks totaling $230,000.00 received from Christopher A. Stack d/b/a KCATS, LLC.

16.  The $230,000.00 represented the proceeds of a specified unlawful activity, namely the solicitation and acceptance of corrupt payments in violation of 18 U.S.C. §666.

17.  It was further part of the conspiracy that Paul J. Silvester directed defendant PETER D. HIRSCHL to transfer the money from the Fleet Account to an Advest Brokerage, Account No. 218-00182, in the name of Peter D. Hirschl and to purchase certain monetary instruments, Connecticut Tax Free Bonds.

18.  It was further part of the conspiracy that Paul J. Silvester and defendant PETER D. HIRSCHL agreed that the money would be transferred to Paul J. Silvester at some undetermined future date.

19.  It was further part of the conspiracy that Paul J. Silvester and Christopher A. Stack agreed that the arrangement

to disguise corrupt payments as legitimate legal fees being paid to defendant PETER D. HIRSCHL would continue in the future and that an additional payment would be made in August, 1999.

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the objects thereof, the defendant PETER D. HIRSCHL, Paul J. Silvester and Christopher A. Stack committed and caused to be committed the following overt acts and others in the District of Connecticut and elsewhere:

20. On or about December 31, 1998, defendant PETER D. HIRSCHL sent to Christopher A. Stack a retainer letter which stated that Christopher A. Stack was to provide a $100,000.00 retainer and be billed at $450.00 per hour.

21. On approximately December 31, 1998, Christopher A. Stack mailed a $100,000.00 check to defendant PETER D. HIRSCHL. Defendant PETER D. HIRSCHL deposited the check to a Fleet Bank Account, Account No. 8919100 in the name of Attorney Peter D. Hirschl. The check did not clear, and at the direction of Paul J. Silvester, defendant PETER D. HIRSCHL redeposited the check. The check cleared on approximately January 21, 1999.

22. On approximately February 2, 1999, at the direction of Paul J. Silvester, defendant PETER D. HIRSCHL transferred $100,000.00 from the Fleet Account to an Advest Account, Account No. 218-00182 in the name of Peter D. Hirschl and purchased Connecticut Tax Free Bonds.

23. On approximately March 19, 1999, Christopher A. Stack hand-delivered a second check in the amount of $130,000.00 to Paul J. Silvester.

24. On approximately March 22, 1999, Paul J. Silvester delivered the $130,000.00 check to defendant PETER D. HIRSCHL who again deposited the check to the Fleet Account, Account No. 8919100 in the name Attorney Peter D. Hirschl. The $130,000.00 check did not clear and, at Paul J. Silvester's direction, defendant PETER D. HIRSCHL redeposited the check to his Fleet Account. The $130,000.00 check cleared on approximately April 6, 1999.

25. On approximately April 13, 1999, at the direction of Paul J. Silvester, defendant PETER D. HIRSCHL transferred $130,000.00 from the Fleet Account to an Advest Account, Account No. 218-00182 in the name Peter D. Hirschl, and purchased Connecticut Tax Free Bonds on approximately April 16, 1999.

All in violation of Title 18, United States Code, Section 1956(h).

UNITED STATES OF AMERICA

*Stephen C Robinson*

STEPHEN C. ROBINSON
UNITED STATES ATTORNEY

JOSEPH C. HUTCHISON
COUNSEL TO THE U. S. ATTORNEY
FEDERAL BAR NO. ct07219
157 CHURCH STREET, 23RD FL.
NEW HAVEN, CT 06510

NORA R. DANNEHY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT01942
450 MAIN STREET, RM. 328
HARTFORD, CONNECTICUT 06103

THOMAS V. DAILY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT03467
450 MAIN STREET, ROOM 328
HARTFORD, CT 06103